[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 10663
The Plaintiff, a general contractor, filed suit against the Defendant subcontractor, alleging a breach of a contract between the parties in that the Defendant failed to pay its mechanics and laborers the prevailing wage rates as determined by the U.S. Secretary of Labor, pursuant to the federal Davis-Bacon Act. The Defendant denied any breach of the contract and filed Special Defenses and a two-count counterclaim, alleging that the Plaintiff, with fraudulent intent, knowingly concealed the fact that prevailing wages were to be paid, and that the Plaintiff's acts constituted CUTPA violations. Based upon a review of the testimony elicited at trial, the exhibits introduced into evidence, and evaluation of the credibility of the witnesses, the Court finds the following facts:
On October 9, 1986 the parties entered into a written contract, (Plaintiff's Exhibit C), which provided that for a contract price of $263,000.00, the Defendant would perform certain construction services on the "Nuestra Casa" job in Hartford. The contract also provided that "all work is to be according to all plans, specifications, addendas, city, state and federal laws and regulations, and to the owner's and architect's approval, and HUD's approval." This contract was a subcontract to the general contract for the construction of the building between the owner and the Plaintiff. The general contract included specifications as part of the Scope of Contract (Plaintiff's Exhibit B, Article 1-A). The specifications, (Plaintiff's Exhibit A), provided on the 64th pages that "all mechanics and laborers employed in the construction of the project shall be paid . . . at wage rates not less than those contained in the applicable wage determination decision of the Secretary of Labor . . .". This was required because Federal HUD Funds were provided to finance the Project, and the requirement was part of the contract between the Plaintiff and the Defendant because, as CT Page 10664 part of the specifications, it was incorporated by reference into this contract.
The Defendant knew that he had to pay prevailing wages both because he was so advised by Julio Mendoza, Deputy Director of La Casa de Puerto Rico, which was the owner, and because he received a set of specifications and prints. The rate schedule was posted in the Plaintiff's on-site construction trailer, which was accessible to the Defendant and the Defendant was in this trailer on many occasions. Although the Defendant knew he had to pay prevailing rates, he made no effort to find out what the prevailing rates were, and at no time during the six months the Defendant worked on the project did he pay his employees the prevailing rates. The pertinent Department of Labor General Wage Decisions containing the appropriate wage rates and classifications were furnished to the Defendant. (Plaintiff's Exhibits D-1 and D-2). The Defendant testified that he was given an inaccurate wage and classification schedule by one of the Plaintiff's employees in December 1986. (Defendant's Exhibit 4). Even if this were so, the Defendant paid no attention to the rates or classifications contained therein when paying his employees, so it is unavailing for him to argue that he relied on that schedule. Each weekly payroll signed and submitted to the Plaintiff by the Defendant, stated "that any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed." (Plaintiff's Exhibit H). Relying on that statement, the Plaintiff stated in its payment applications to the owner that all laborers and mechanics employed on the project were paid at the applicable prevailing wage rate. Since this was not true, the Plaintiff was in violation of its contract with the owner and, as a result, the Plaintiff had to pay to the Department of Labor, Defendant's back wage liability, which was determined to be $63,013.26. This amount was taken out of the contract balance owed to the Plaintiff by the owner. The Plaintiff's loss of $63,013.26 has been reduced by $23,000.00, which was the amount of the unpaid contract balance owed by the Plaintiff to the Defendant, so the Plaintiff's damages were in the principal CT Page 10665 amount of $40,013.26.
The Plaintiff fully completed the project by the end of December 1987, a certificate of occupancy was issued, and all other requirements for payment were met. But for the fact that the amount underpaid by the Defendant was withheld by the owner from the amount owed to the Plaintiff, the Plaintiff would have received the money by February 1, 1987. (Plaintiff's Exhibit B, Article 3-C).
The Defendant claims that the Plaintiff is responsible for the Defendant's compliance with the obligation to pay prevailing rates. This is true as to the Plaintiff's obligation to the Secretary of Labor; in other words, if the Defendant doesn't pay the proper rates, the Labor Department will ensure that the Defendant's employees are properly paid by making the Plaintiff pay them. And that is what happened here. However, it is an entirely different matter as between the Plaintiff and the Defendant. As between them, and that is what this case is about, it was the Defendant's primary responsibility to pay the prevailing rates and the contract between the parties so provided (Plaintiff's Exhibit C). For the Defendant to say that even though he was told that he had to pay prevailing wages, and that he received a copy of the specifications requiring that his employees be paid prevailing rates, and then at the same time to claim that the Plaintiff should have to pay what the Defendant failed to pay, would be manifestly unjust. The purpose of the HUD regulations was to protect the rights of the Defendant's employees, not to provide a shield to allow the Defendant to avoid his contractual obligations. Once the Plaintiff paid the Defendant's employees, which it did when the money was withheld from its contract balance with the owner, the Plaintiff stood in the shoes of the Defendant's employees, who certainly had a right to recover from their employer, the Defendant, the amount that he had underpaid them. It is true the Plaintiff did not fully comply with its obligation under the general contract, but the Plaintiff paid the price for that when money was withheld from its balance. That contract was for the protection of the Defendant's employees, and it should not be used to cause a windfall for the Defendant, which would be the outcome if he were to prevail in this case.
The windfall would be that the Plaintiff would be CT Page 10666 fulfilling the Defendant's contractual obligations to the Defendant's employees by paying them what the Defendant should have paid them in the first place.
The Defendant knew he had to pay prevailing rates to his employees, entered into a contract with the Plaintiff which obligated him to pay prevailing rates, made no effort to determine what those rates were, and did not pay them. The Defendant already knew, and even if he didn't, should have known, what he now claims the Plaintiff should have told him. Thus any losses he suffered were primarily his own responsibility. In his counterclaim the Defendant alleged that the Plaintiff `concealed the fact that prevailing wages were to be paid.' The answer to this is that the Defendant admitted that he knew that prevailing wages had to be paid. Therefore even if the Plaintiff didn't tell him, he knew anyway. As far as the Defendant's CUTPA claim is concerned, the CUTPA statutes are to protect against unfair and deceptive practices. The Defendant was not deceived or taken advantage of; the position he finds himself in was primarily of his own making.
The Court finds that the Plaintiff has proved by a fair preponderance of the evidence, all the essential allegations of its Complaint, and that the Defendant has failed to prove by a fair preponderance of the evidence, the essential allegations of its Counterclaim.
Judgment may enter for the Plaintiff in the amount of $40,013.26, plus interest at the statutory rate from February 1, 1988 to the date of payment plus costs. The Plaintiff has hereby paid the Defendant the $23,000 balance on this contract.
Judgment may enter for the Plaintiff on the Counterclaim.
Richard A. Walsh, Judge